Same Case. — ON a Re hearing.
It is well settled in courts of equity, that where property has been purchased by a guardian with the funds of the ward, the latter may elect to take the thing purchased, or sue for the money used. So, where a trustee invests trust property or its proceeds in any other property, the cestui que trust has the option of taking the property so purchased, or of holding the trustee personally liable. Oliver v. Pratt, 3 Howard’s Sup. Ot. Reports, 405.
Merrick, on the same side.
The minors have the right to claim the money, or the property purchased. 2 Equity Digest, 474, et seq., Title, Resulting Trusts. 1 Johnson’s Ch. Rep. 450. 2 Washington C. C. R. 441. 4 Kent’s Comm. 305-6.
Baylies, for the appellants.
Morphy, J.
On a re-examination of the pleadings and evidence in this case we are of opinion, that the claim for damages against the defendant Carruth individually, was properly sustain■ed by the verdict and judgment below. The sequestration of the slaves belonging to the plaintiffs, was sued out by the defendant as a creditor in his individual name, some time before the appointment of a syndic to the estate of William Calmes. The proceeding was instituted under the insolvent law of 1817, which, without requiring bond, as in other cases of sequestration, gives this harsh remedy on the simple oath of a creditor, that be has strong reasons to fear, that the debtor may avail himself of the stay of proceedings, to keep his property from his creditors. B. & C.’s Dig. 488, 5 9. About three months afterwards, the defendant was appointed syndic and proceeded to advertise the slaves seized for sale as syndic, when the plaintiffs brought this action for the double purpose of arresting the sale, and of recovering damages against Carruth, for having illegally seized and detained their property. The petition states, that the slaves were seized at the instance of James J. Carruth, and although in speaking of the negroes, he is said to have advertised them for sale, as syndic, the claim for damages is distinctly set up against him in his private capacity. Admitting that Carruth was quali *665 fied to act as syndic, which is strenuously denied by the plaintiffs) on the ground, that he never gave any bond as such, nor was ever dispensed from giving one by the creditors, it is believed to be well settled, that no administrator can perpetrate acts to the injury of others, and shelter himself from personal liability under his representative Capacity, especially, where, as in this case, such acts were committed previous to his appointment. 2 La. 202. 6 La. 451. 2 Rob. 346. The defendant when appointed syndic, could have brought a petitory action ; and if he had feared the removal of the property, he might have had it sequestered, upon giving adequate security to protect the rights of the plaintiffs. Instead of doing so, he chose to resort to the step he took, in his own name as a creditor, when the slaves in question were not mentioned in the insolvent’s schedule, and when he well knew that they belonged to the plaintiffs, whose attorney he had been in a suit against one N. Berthoud, wherein they were adjudged to be their property. Under the circumstances of this case as exhibited by the record, we cannot say that the jury allowed excessive damages.
As relates to the slave Juliette, admitting that the evidence fully makes out that she was purchased by William Calmes, with funds belonging to his minor children, and that minors, when their property has been illegally sold, or a purchase made with their funds, can claim either the money or the property, yet, we apprehend, that they can make this election only when they become of age, because it is equivalent to an alienation of their estate, or a purchase of property, which acts they cannot do without the authorization of a family meeting. In the present case, all the plaintiffs except one, are still minors, and they are incompetent to ratify or approve of the purchase of their father. The title to this slave whieh vested in him, has passed to his creditors by his surrender.
It is, therefore, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and the verdict set aside, as to the slave Juliette ; and it is further adjudged and decreed, that the plaintiffs recover and be quieted in their title to the following slaves, to wit: Phillis, Jordon, Mariah, and her two-children, Dublin and Eliza, Joe, Edinbormieh and Coleman } *666 and that they have judgment against the succession of James J. Carruth, individually, for one thousand two hundred and ninety-six dollars, with costs in the District Court; reserving to them their right if any they have, to claim of the syndic, in due course of administration, the amount due by their father for money or property disposed of belonging to them ; the costs of this appeal to be borne by the plaintiffs and appellees.